CASE NO. 14-17186

=========================================================

IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

_____

SARMAD SYED, *etc.*,

*Appellant*,

v.

M-I, LLC, *etc. et al.*,

*Respondent*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 14−CV−000742−WBS−BAM
THE HONORABLE WILLIAM B. SHUBB, DISTRICT COURT JUDGE

=========================================================

## PLAINTIFF-APPELLANT SARMAD SYED'S OPENING BRIEF

=========================================================

PETER R. DION-KINDEM
PETER R. DION-KINDEM, P.C.
THE DION-KINDEM LAW FIRM
21550 Oxnard Street, Suite 900
Woodland Hills, CA 91367
Telephone: (818) 883-4900
Fax: (818) 883-4902
Email: peter@dion-kindemlaw.com

*Attorneys for Plaintiff and Appellant
Sarmad Syed*

THE BLANCHARD LAW GROUP
LONNIE C. BLANCHARD, III, ESQ.
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone: (213) 599-8255
Fax: (213) 402-3949
Email:lonnieblanchard@gmail.com

*Attorneys for Plaintiff and
Appellant Sarmad Syed*

=========================================================

TABLE OF CONTENTS

I.  STATEMENT OF JURISDICTION. ...............................................................1

    A.    The District Court had subject matter jurisdiction. ...............................1

    B.    The judgment is appealable. .................................................................1

    C.    This appeal is timely. ...........................................................................1

II.  INTRODUCTION. ................................................................................2

III.  THE APPLICABLE STANDARD OF REVIEW IS *DE NOVO*. .....................................4

IV.  M-I'S INCLUSION OF A RELEASE AND INDEMNITY PROVISION IN THE
     FCRA DISCLOSURE IT HAD SYED SIGN BEFORE PROCURING A CONSUMER
     REPORT ABOUT SYED CONSTITUTED A WILLFUL VIOLATION OF SECTION
     1681B(B)(2). ..................................................................................5

    A.    A person may only procure a consumer report for employment
          purposes if a clear and conspicuous disclosure has been made in
          writing to the consumer before the report is procured "in a
          document that consists solely of the disclosure." ...............................5

    B.    M-I violated Section 1681b(b)(2) by including a release and
          indemnity provision in the disclosure it provided to Syed. .................6

    C.    Syed's allegations of willfulness. .........................................................7

    D.    The express statutory language of Section 1681b(b)(2)
          demonstrates that any interpretation that such section permits
          the inclusion of waiver and release provisions in a disclosure
          form is "objectively unreasonable." ...................................................14

    E.    Congress's express adoption of the "authorization" exception to
          the "consisting solely of the disclosure" requirement in
          response to FTC advisory opinions demonstrates that the
          inclusion of release and waiver provisions in a disclosure form
          is clearly statutorily impermissible. ..................................................16

    F.    The lack of Circuit Court authority on the issue does not
          insulate M-I from liability. ................................................................19

i

V.    CONCLUSION.................................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Andrus v. Glover Const. Co.* (1980) 446 U.S. 608, 616-17 [100 S.Ct. 1905, 1910, 64 L.Ed.2d 548] ..................................................................................17

*Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3 ..........................................................................................25

*Boudette v. Barnette,* 923 F.2d 754, 756–57 (9th Cir.1991) ...................................17

*Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 699.20, 21

*Cairns v. GMAC Mortgage Corp.,* No. CV 04–01840 PHX(SMM), 2007 WL 735564, *8 (D.Ariz. Mar.5, 2007)..................................................................28

*Centuori v. Experian Information Solutions, Inc.,* 431 F.Supp.2d 1002, 1007 (D.Ariz.2006)...........................................................................................28

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984) 467 U.S. 837, 842 [104 S.Ct. 2778, 2781, 81 L.Ed.2d 694] ..............................................18

*Dalton v. Capital Associated Industries, Inc.* (4th Cir. 2001) 257 F.3d 409, 416...28

*Duncan v. Walker* (2001) 533 U.S. 167, 174 [121 S.Ct. 2120, 2125, 150 L.Ed.2d 251].......................................................................................................15

*Edwards v. Toys ""R"" Us* (C.D. Cal. 2007) 527 F.Supp.2d 1197, 1210 ................28

*Enesco Corp. v. Price/Costco Inc. (9th Cir. 1998) 146 F.3d 1083, 1085* ................4

*Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995)......................................................................................................28

*Lenox v. Equifax Information Services LLC,* No. 05–01501–AA, 2007 WL 1406914, *6 (D.Or. May 7, 2007).........................................................................28

*Morley v. Walker* (9th Cir. 1999) 175 F.3d 756, 759 ..............................................4

*Russello v. U.S.* (1983) 464 U.S. 16, 23 [104 S.Ct. 296, 300, 78 L.Ed.2d 17]........15

*Safeco Ins. Co. of America v. Burr* (2007) 551 U.S. 47, 70 [127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045]..............................................................................................20

*Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ..............18

*Smith v. Under Armour, Inc.* (S.D. Fla. 2008) 593 F.Supp.2d 1281, 1287 ............18

*Smith v. Waverly Partners, LLC* (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV)
   2012 WL 3645324 ................................................................................27

*Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 ....................4

*U.S. v. Locke* (1985) 471 U.S. 84, 95 [105 S.Ct. 1785, 1792, 85 L.Ed.2d 64]........18

## S<small>TATUTES</small>

15 U.S.C. Section 1681b(b) ..............................................................................2, 5

17 U.S.C. Section 1681n................................................................................7

28 U.S.C. Section 1291 ................................................................................1

28 U.S.C. Section 1331 ................................................................................1

29 U.S.C. Section 216................................................................................1

## R<small>ULES</small>

Federal Rules of Appellate Procedure Rule 4(a)(1)                    1

## I.   STATEMENT OF JURISDICTION.

Pursuant to Circuit Rule 28-2.2, Plaintiff and Appellant Sarmad Syed ("Syed") submits the following Statement of Jurisdiction.

### A.   The District Court had subject matter jurisdiction.

This District Court had jurisdiction over Syed's claims based on Defendant's violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. Section 1681p and 28 U.S.C. Section 1331 because the action asserts rights arising under federal law.

### B.   The judgment is appealable.

Plaintiff is appealing from the Judgment dismissing with prejudice the First Amended Complaint as to Defendant M-I, LLC Pursuant to Rule 54(b) filed on November 4, 2014. Such judgment is appealable under 28 U.S.C. Section 1291.

### C.   This appeal is timely.

The judgment was filed on November 4, 2014. (Excerpts of Record, 7, p. 91.)[1] Syed filed his Notice of Appeal on November 4, 2014. (ER: 8, p. 92.) Thus, this appeal is timely in that it was filed within 30 days. (Federal Rules of Appellate Procedure Rule 4(a)(1).)

---

[1] Hereinafter, references to the Excerpts of Record will be as follows: "ER: [Tab No.], p. --."

1

## II.  INTRODUCTION.

Plaintiff Sarmad Syed ("Plaintiff") filed his First Amended Complaint alleging class claims against his former employer, Defendant Compass M-I, LLC ("M-I") for violation of the FCRA. (ER: 1.)

Section 1681b(b) provides that an employer, such as M-I, can only "procure or cause to be procured" a consumer report for employment purposes if it has complied with its disclosure obligations "in a document that consists solely of the disclosure" and certified to the Consumer Reporting Agency that it has complied with such obligations and will comply with other obligations, should certain circumstances arise.

In this case, Syed alleged that the "document" authorizing the consumer report that was issued as to him was not a document "that consists solely of the disclosure." Syed alleged:

> 14. On or about July 20, 2011, Plaintiff applied for a job with M-I. As part of the application process, M-I presented Plaintiff with a document entitled "Pre-employment Disclosure & Release." (See Exhibit 1.) This form was prepared by PreCheck and provided by PreCheck to M-I and other employers. This form includes a provision purporting to waive or release rights as follows:
>
> > I understand the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release and indemnify prospective employer, PreCheck, Inc., their agents, servants and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and

2

> dissemination of information that is false and untrue if obtained by a third party without verification.
>
> It is expressly understood that the information obtained through the use of this release will not be verified by PreCheck, Inc. (ER: 1, p. 4-5.)

M-I filed a motion to dismiss pursuant to Rule 12(b)(6), contending that, as a matter of law, its inclusion of the release and indemnity provisions in the disclosure provided to Syed did not violate the "consisting solely of the disclosure" provision of Section 1681b(b)(2) and that even if such inclusion did violate the provision, such violation was not "willful" as a matter of law. (ER: 2, 3.)

The District Court agreed with M-I and dismissed the claim against M-I. In so ruling, the District Court erroneously ignored the clear language of Section 1681b(b)(2) and relevant Federal Trade Commission opinion letters as well as the reasoning of other District Courts that found that the inclusion of such types of release provisions constitute the willful violation of Section 1681b(b)(2).

The District Court's aberrant and unfounded decision, which is contrary to numerous other district court decisions, cannot be allowed to stand. No other Circuit Court has addressed the issue, and this Court should therefore make it clear that an employer's inclusion of release and indemnity provisions, or any other provisions that do not constitute the requisite disclosure under the FCRA or authorization in an FCRA disclosure document given to its employees authorizing

3

the preparation of consumer reports about them constitutes a willful violation of Section 1681b(b)(2) as a matter of law.

This Court should therefore reverse the judgment and order the district court to enter an order denying M-I's Motion to Dismiss.

## III. THE APPLICABLE STANDARD OF REVIEW IS *DE NOVO.*

A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is reviewed *de novo. Monterey Plaza Hotel Ltd. Partnership v. Local 483 of Hotel Employees and Restaurant Employees Union, AFL-CIO* (9th Cir. 2000) 215 F.3d 923, 926. Review is limited to the contents of the complaint. *Enesco Corp. v. Price/Costco Inc.* (9th Cir. 1998) 146 F.3d 1083, 1085. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.* A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Morley v. Walker* (9th Cir. 1999) 175 F.3d 756, 759; *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 *opinion amended on denial of reh'g,* (9th Cir. 2001) 275 F.3d 1187.

**IV. M-I's inclusion of a release and indemnity provision in the FCRA disclosure it had Syed sign before procuring a consumer report about Syed constituted a willful violation of Section 1681b(b)(2).**

**A. A person may only procure a consumer report for employment purposes if a clear and conspicuous disclosure has been made in writing to the consumer before the report is procured "in a document that consists solely of the disclosure."**

15 U.S.C. Section 1681b(b) of the FCRA regulates the conduct of "persons"

who furnish, use or procure a "consumer report" for employment purposes and

provides:

> (b) Conditions for furnishing and using consumer reports for employment purposes
>
> (1) Certification from user
>
> A consumer reporting agency may furnish a consumer report for employment purposes only if --
>
> (A) the person who obtains such report from the agency certifies to the agency that--
>
> (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
>
> (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
> (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.
>
> (2) Disclosure to consumer

5

(A) In general

Except as provided in subparagraph (B), *a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer*, unless--

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. . . . (Emphasis added.)

## B.  M-I violated Section 1681b(b)(2) by including a release and indemnity provision in the disclosure it provided to Syed.

In this case, Syed alleged that the "document" authorizing the procurement of a consumer report concerning him was not a document "that consists solely of the disclosure":

14. On or about July 20, 2011, Plaintiff applied for a job with M-I. As part of the application process, M-I presented Plaintiff with a document entitled "Pre-employment Disclosure & Release." (See Exhibit 1.) This form was prepared by PreCheck and provided by PreCheck to M-I and other employers. This form includes a provision purporting to waive or release rights as follows:

I understand the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release and indemnify prospective employer, PreCheck, Inc., their agents, servants and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained by a third party without verification.

6

> It is expressly understood that the information obtained through the use of this release will not be verified by PreCheck, Inc. (ER: 1, p. 4-5.)

Thus, M-I cannot dispute that it violated Section 1681b(b)(2) when it procured or caused to be procured a consumer report regarding Syed for employment purposes without making the required disclosure "in a document that consists solely of the disclosure" by using the disclosure and authorization form to obtain indemnity and a release of claims from Syed.

### C. Syed's allegations of willfulness.

Syed was only seeking statutory damages for M-I's violations, which are recoverable only when a violation is "willful." 17 U.S.C. § 1681n.[2]

---

[2] Section 1681n provides in relevant part:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

In Syed's First Amended Complaint, Syed alleged facts demonstrating M-I's willfulness. Syed included citations to FTC opinion letters that unequivocally demonstrated that at the time of the consumer report was procured in this case, all applicable legal authority had found that the addition of language other than the actual "authorization" in a disclosure form violated the express language of Section 1681b(b)(2):

> 18. To the extent that M-I is contending that the inclusion of the release and indemnity language in the disclosure and authorization form did not violate the provisions of Section 1681b(b)(2)(A), such interpretation of the provisions of Section 1681b(b)(2)(A) is objectively unreasonable. The language of Section 1681b(b)(2)(A) is plain and clearly ascertainable. According to Section 1681b(b)(2)(A), the disclosure must be "clear and conspicuous" and set forth "in a document that consists solely of the disclosure," with the exception that the required written "authorization may be made on the [same] document." 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

> 19. M-I had no obligation to obtain a waiver of rights from the consumer. In fact, doing so in a disclosure form directly conflicted with the FCRA's clear prohibition on an employer's inclusion of any additional provision, excluding the authorization itself, in the disclosure form. The statutory text of Section 1681b(b)(2)(A) is unambiguous and not susceptible of differing interpretations. . . .

> 20. The Authorization Form does not derive its content from the pertinent statutory text. There is simply nothing in the statutory text that would validate any claim by M-I that it is proper to include a waiver of rights provision, even one narrowly tailored to M-I's procurement of the applicant's authorization for the consumer report, in a disclosure form. The statute itself cuts exactly the other way. . . .

> 21. A Federal Trade Commission ("FTC") opinion letter from 1998 addresses the sufficiency of a combined disclosure and authorization form containing a waiver of FCRA rights. The Letter states as follows:

8

"While we believe that you may combine the disclosure and authorization ..., we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. ***The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes***. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1 ("Hauxwell FTC Letter")." (*Reardon v. ClosetMaid Corp*. (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730) 2013 WL 6231606.) (Emphasis added.)

22. An FTC opinion letter from 1997 provides that even where an employer includes a disclosure in an employment application, "an employer that follows this procedure must also clearly and conspicuously disclose in a ***completely separate document*** that a consumer report may be obtained for employment purposes, as required by [section 1681b(b)(2)(A) ]." (Emphasis added.) Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J. (Dec. 18, 1997), 1997 WL 33791224 (F.T.C.), 1 ("Hawkey FTC Letter"). The Hawkey FTC Letter further clarifies that "***[n]othing else*** may appear on the document that detracts from the disclosure required by [section 1681b(b)(2)(A) ]. An employer may elect to obtain the consumer's authorization on that document, because that would focus the consumer's attention on the disclosure and thus further the purpose intended by the 'separate document" provision of this section." *Id*. (Emphasis added.)

23. An additional FTC opinion letter from 1997 provides as follows:

The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure ... will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. ***However, such a document should include***

***nothing more than the disclosure and the authorization for obtaining a consumer report.*** (Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 (emphasis added) ("Steer FTC Letter"). (Emphasis added.)

24. The indemnity and release verbiage in the authorization is not an "authorization," which is the only other provision the FCRA allows in a valid disclosure form. To hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not a great distraction" safe harbor for impermissible language, which, of course, it may not do. If that is to be done, it is a job for Congress.

25. The case of *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 699 does not support any claim that it was objectively reasonable for M-I to believe that inclusion of an indemnity and liability release in the disclosure form did not violate Section 1681b(b)(2). That case did not involve the inclusion of a liability release in a disclosure form. In that case, the plaintiff acknowledged that she had signed a disclosure form purporting to authorize her employer to obtain her consumer report, but contended that the form did not clearly and conspicuously disclose that it could be used for employment purposes. The plaintiff purported to identify two deficiencies in the disclosure form, to wit: that it uses the same style of text throughout, without contrasting any portion with text of a different size or color, and that it "buries" the relevant disclosure in a "laundry list" of other information that the form authorizes the Defendants to obtain. *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 697

26. As the Court noted in *Burghy*:

The FCRA does demand that the revelation that a consumer report may be obtained for employment purposes be made "in a document that consists solely of [that] disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Thus, one reading of Plaintiff's argument might be that including the explanatory language of the other paragraphs alongside the bullet points means that the document does not consist *solely* of the disclosure that a consumer report may be obtained for employment purposes. This argument is also unpersuasive, if it is, in fact, what Plaintiff means to convey. The Act specifically states that

10

the language *authorizing* the employer to obtain a consumer report (the first and second paragraphs) may be included alongside the language *disclosing* that such a report may be used for employment purposes (the bullet points). 15 U.S.C. § 1681b(b)(2)(A)(ii) ("[an employer may obtain a consumer report if] the consumer has authorized in writing (*which authorization may be made on the document referred to in clause (i)* ) the procurement of the report by that person.") (emphasis added). Including the explanatory language alongside the disclosure language is logical, given their relationship, and the Court cannot conclude that the presence of the former renders the latter inconspicuous. *See Cafarelli v. Yancy,* 226 F.3d 492, 499 (6th Cir.2000) ("[we must interpret] all statutes ... 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' ") (quoting *Lake Cumberland Trust, Inc. v. EPA,* 954 F.2d 1218, 1222 (6th Cir.1992)).

27. The Court's decision in Smith v. Waverly Partners, LLC (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV) 2012 WL 3645324 does not support M-I's position. **First, it was issued after the consumer report was generated in this case. Thus, Defendant could not have relied on it.** Second, the Court acknowledged that an FTC opinion letter specifically found that "a waiver by the consumer of his or her rights under the FCRA" to be in violation of the FCRA in light of section 1681b(b)(2)(A)'s inclusion of the term "solely." Finally, the Court expressly found that "**inclusion of the waiver provision was statutorily impermissible.**"

28. In the case of *Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3, the Court denied a motion to dismiss in which the plaintiff had alleged a violation of Section 1681b(b)(2) based on the inclusion of a liability release. The Court also found allegations of willfulness were sufficient to withstand a motion to dismiss. The Court reasoned:

> This section also contains a liability release for any damage Avila may experience as a result of the disclosure of information about him to NOW Foods, as well as a paragraph indicating that he is an at-will employee who can be terminated at any time with or without cause and that a deliberate misstatement on the application will result in his

11

immediate dismissal. In the final paragraph of this section, Avila agrees to comply with all company rules, policies and procedures. As to the Background Report Authorization Form, it states that "I hereby authorize NOW Health Group, Inc., Argus Services, Inc. and their agents to obtain and review the 'consumer report' or 'investigative consumer report' on me described in the [FCRA Statement]." The form, however, also contains a release of liability or claims that Avila might have arising from the consumer report and any information contained in it.

Thus, despite NOW's assertion that both forms comply with the FCRA stand alone disclosure requirement, each form contains information that is not the disclosure, contrary to the express language of the FCRA, which requires a disclosure "in a document that consists solely of the disclosure." . . . At the motion to dismiss stage, where all inferences are made in favor of the nonmovant, the Court is unwilling to conclude that Avila has not stated a claim.

Finally, NOW asserts that Avila has not and cannot allege willfulness, which he must do since he has not alleged actual damages. Avila seeks statutory damages, which are available only for willful violations of the FCRA. *Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir.2008). The Supreme Court has stated that willful "means recklessness—something more than negligence but less than knowledge of the law's requirements." *Id.* at 726. Specifically, the Supreme Court stated that:

a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. v. Burr,* 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

However, state of mind may be alleged generally. Fed.R.Civ.P. 9(b). Further, it is reasonably inferred that NOW was aware of its disclosure requirement under the FCRA based on the statement in the Background Report Authorization Form. Avila alleges that NOW

willfully breached the FCRA because it "violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)" and that its conduct is "contrary to long-standing regulatory guidance and caselaw." (FAC, Dkt. # 36 ¶ 41.) ***These allegations are sufficient to allege a knowing or reckless violation of the FCRA, which are required for a finding of willfulness***. *Lavery v. RadioShack Corp.,* 13 C 5818, 2014 WL 2819037, at *2 (N.D.Ill. June 23, 2014) (allegations that amendment to FCRA gave merchants three years to comply with new requirements, which were widely publicized, and merchants were advised by credit card companies of the requirements were sufficient to allege willfulness). (Emphasis added.)

29. M-I knew or should have known about its legal obligations under the FCRA. M-I obtained or had available substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer or consumer reporting agency knows about or can easily discover these obligations. M-I either knew or recklessly failed to know the disclosure requirements of Section 1681b(b)(2) and knew or recklessly failed to know that using a disclosure form that included an indemnity and liability waiver was facially contrary to the express language of Section 1681b(b)(2) and all of the administrative guidance available and violated the law. Despite knowing of these legal obligations, M-I intentionally and/or recklessly acted consciously in breaching its known duties and depriving Plaintiff and other Class members their rights under the FCRA.

30. Plaintiff believes that the motivation for the indemnity and release language being included in the disclosure form was to pre-emptively and prospectively discourage and deceive employees about their rights to bring claims against the M-I for wrongfully obtained and wrongfully used consumer report information. Despite knowing that the indemnity and release language was illegal and unenforceable, M-I wrongfully and intentionally included and/or allowed the indemnity and release language to be included in the disclosure form. M-I had knowledge of the law related to the proper form of the disclosure, but, instead, M-I consciously and intentionally included the illegal and unenforceable language in the disclosure form. No reasonable employer would have included such indemnity and release language in the disclosure for any reasons other than for wrongful purposes. (ER: 1, p. 5-10.)

13

Thus, these facts, which must be accepted as true for purposes of M-I's motion to dismiss, establish that at the time the consumer report at issue in this case was procured, there was not one single authority that had found that the inclusion of a release and indemnity provision in a disclosure did ***not*** violate the express provisions of Section 1681b(b)(2).

**D.** **The express statutory language of Section 1681b(b)(2) demonstrates that any interpretation that such section permits the inclusion of waiver and release provisions in a disclosure form is "objectively unreasonable."**

Section 1681b(b)(2) provides:

> (2) Disclosure to consumer
>
> (A) In general
>
> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists <u>solely of the disclosure,</u>*** that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (***which authorization may be made on the document referred to in clause (i)***)) the procurement of the report by that person. . . . (Emphasis added.)

Congress clearly sought to restrict the disclosure requirement of 1681b(b)(2)(A)(i)(ii) with the word "solely." Other statutory disclosures, such as those contained in 15 U.S.C. Section 1681d and 15 U.S.C. Section 1681s-3 do not

14

require the disclosures to consist "solely" of the disclosure.[3] The use of the language "solely" has to mean something. Indeed, the law is clear that "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' [citation]." (*Russello v. U.S.* (1983) 464 U.S. 16, 23 [104 S.Ct. 296, 300, 78 L.Ed.2d 17].)

Under Defendant's argument, the use of the word "solely" is surplusage that has no meaning. This is contrary to well-established principles of statutory construction. As the Supreme Court held in *Duncan v. Walker* (2001) 533 U.S. 167, 174 [121 S.Ct. 2120, 2125, 150 L.Ed.2d 251]:

> "It is our duty 'to give effect, if possible, to every clause and word of a statute.' " *United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)); see also *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (describing this rule as a "cardinal principle of statutory construction"); *Market Co. v. Hoffman,* 101 U.S. 112, 115, 25 L.Ed. 782 (1879) ("As early as in

---

[3]Section 1681d only requires the disclosure to "clearly and accurately" disclose ... not later than three days after the date the report was first requested. Likewise, Section 1681s-3, with an effective date of December 4, 2003, does not require the disclosure to consist "solely" of the disclosure. Rather, 1681s-3(a) simply calls the disclosure to be "clearly and conspicuously disclosed" and further allows the non-1681b disclosure to be coordinated or combined with any other notice required under 1681s-3 or together with other disclosures required to be issued by persons subject to 1681s-3. While the affiliate disclosure in 1681s-3 is not technically a 1681b "Consumer Report," it is because of that reason that Congress's intent to require a 1681b "Consumer Report" disclosure to consist "solely of the disclosure" is to be presumed intentional and purposeful.

Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant' "). We are thus "reluctan[t] to treat statutory terms as surplusage" in any setting.

If Congress had intended Section 1681b(b)(2) to allow a disclosure document to include additional language so long as such language did not distract from the disclosures set forth in the document, it could have done so. Congress used the word "solely," however, and it is objectively unreasonable for M-I to claim that the use of the word "solely" really means anything else.

**E. Congress's express adoption of the "authorization" exception to the "consisting solely of the disclosure" requirement in response to FTC advisory opinions demonstrates that the inclusion of release and waiver provisions in a disclosure form is clearly statutorily impermissible.**

In its decision below, the District Court opined that because Section 1681b(b)(2)(ii) expressly ***allows*** an authorization to be made in the same document as the "disclosure," such statute could also reasonably be construed as "allowing" a disclosure to also include a release and indemnity provision without violating the "consisting solely of the disclosure" mandate:

> The relevant portion of § 1681b(b) requires that the document "consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A) (i). But the immediately following subsection allows the consumer's authorization to "be made on the document referred to in clause (i)"-that is, the same document as the disclosure. 15 U.S.C. § 1681b(b)(2)(A)(ii). Thus, the statute itself suggests that the term "solely" is more flexible than at first it may appear. This "less-than-pellucid" statutory language

16

weighs in favor of finding that M–I's interpretation was objectively reasonable. *Safeco,* 551 U.S. at 70. (ER: 6, p. 81.)

Such conclusion is unsupported by logic or any legal authority. As discussed above, such interpretation effectively renders the "consisting solely of the disclosure" language superfluous in direct contravention of a fundamental principle of statutory construction. Moreover, Congress, in the Consumer Reporting Employment Clarification Act of 1998, specifically identified the **only** exception to the requirement that the requisite "disclosure" must be "in a document that consists solely of the disclosure." In the amendment, Congress allowed the written authorization to be made on the same document as the disclosure:

> (ii) the consumer has authorized in writing (***which authorization may be made on the document referred to in clause (i)***) the procurement of the report by that person. (Emphasis added.)

"Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (*Andrus v. Glover Const. Co.* (1980) 446 U.S. 608, 616-17 [100 S.Ct. 1905, 1910, 64 L.Ed.2d 548]. The well-established doctrine of *expressio unius est exclusio alterius* in statutory construction applies in this case.[4]

---

[4] The doctrine of *expressio unius est exclusio alterius* "as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Boudette v. Barnette,* 923 F.2d 754, 756–57 (9th Cir.1991).

"First, always, is the question whether Congress has directly spoken to the precise

question at issue. If the intent of Congress is clear, that is the end of the matter. . ."

(*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984) 467 U.S.

837, 842 [104 S.Ct. 2778, 2781, 81 L.Ed.2d 694].) As the Court held in *U.S. v.*

*Locke* (1985) 471 U.S. 84, 95 [105 S.Ct. 1785, 1792, 85 L.Ed.2d 64]:

> Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result. On the contrary, deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that the legislative purpose is expressed by the ordinary meaning of the words used. (Internal citations and quotations omitted.)

Had Congress intended to allow employers to include additional provisions in

the disclosure document other than information it expressly authorized (the

authorization), it could easily have included language to that effect in the statute. It

did not do so, however, and its "silence is controlling." (*See Smith v. Under*

*Armour, Inc.* (S.D. Fla. 2008) 593 F.Supp.2d 1281, 1287 (finding Congress's

---

*See also, e.g.*, (*Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005): "The statute does not say expressly that *only* a legal or beneficial owner of an exclusive right is entitled to sue. But, under traditional principles of statutory interpretation, Congress' explicit listing of who *may* sue for copyright infringement should be understood as an *exclusion of others* from suing for infringement.")

failure to include language regarding e-commerce in one FCRA section instructive in determining whether that section applied to e-commerce).

M-I cannot credibly argue that the term "solely" is ambiguous or open to varying interpretations. Here, Congress authorized a specific exception to the "consisting solely of" requirement. To interpret such specific and limited exception as authorizing an interpretation that would essentially eviscerate the "consisting solely of" requirement of Section 1681b(b)(2) by allowing release and indemnity provisions and other "non-disclosure" provisions has no basis in logic or applicable principles of statutory construction.

F.    The lack of Circuit Court authority on the issue does not insulate M-I from liability.

The fact that neither the Ninth Circuit nor any other Circuit court has ruled upon the legality of the inclusion of an indemnity and release provision in a disclosure form by no means establishes that the issue was "uncertain." One need only look to the express language of the statute itself and the FTC opinion letters to know the inclusion of such language was "statutorily impermissible."  This is simply not a case where the statutory language is "less than pellucid," or where there has been no guidance from the FTC. Thus, the Supreme Court's decision in

*Safeco Ins. Co. of America v. Burr* (2007) 551 U.S. 47, 70 [127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045] is inapposite on the issue of M-I's willfulness.[5]

The case of *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 699, cited by Defendant, does not support any claim that it was objectively reasonable for M-I to believe that inclusion of the indemnity and liability release and other provisions in the disclosure form did not violate Section 1681b(b)(2). In that case, the plaintiff acknowledged that she had signed a disclosure form purporting to authorize her employer to obtain her consumer report, but contended that the form did not clearly and conspicuously disclose that it could be used for employment purposes. The plaintiff purported to identify two

---

[5] In that case, the Court held:

> This is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took. Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC[19] (which in any case has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question, see 15 U.S.C. §§ 1681s(a)(1), (e)). Cf. Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (assessing, for qualified immunity purposes, whether an action was reasonable in light of legal rules that were "clearly established" at the time). Given this dearth of guidance and ***the less-than-pellucid statutory text***, Safeco's reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability. (Emphasis added.)

20

deficiencies in the disclosure form: that it used the same style of text throughout, without contrasting any portion with text of a different size or color, and that it "buried" the relevant disclosure in a "laundry list" of other information that the form authorizes the Defendants to obtain. *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 697.

The Court held:

> The FCRA does demand that the revelation that a consumer report may be obtained for employment purposes be made "in a document that consists solely of [that] disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Thus, one reading of Plaintiff's argument might be that including the explanatory language of the other paragraphs alongside the bullet points means that the document does not consist *solely* of the disclosure that a consumer report may be obtained for employment purposes. This argument is also unpersuasive, if it is, in fact, what Plaintiff means to convey. The Act specifically states that the language *authorizing* the employer to obtain a consumer report (the first and second paragraphs) may be included alongside the language *disclosing* that such a report may be used for employment purposes (the bullet points). 15 U.S.C. § 1681b(b)(2)(A)(ii) ("[an employer may obtain a consumer report if] the consumer has authorized in writing (*which authorization may be made on the document referred to in clause (i)* ) the procurement of the report by that person.") (emphasis added). Including the explanatory language alongside the disclosure language is logical, given their relationship, and the Court cannot conclude that the presence of the former renders the latter inconspicuous. *See Cafarelli v. Yancy,* 226 F.3d 492, 499 (6th Cir.2000) ("[we must interpret] all statutes ... 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' ") (quoting *Lake Cumberland Trust, Inc. v. EPA,* 954 F.2d 1218, 1222 (6th Cir.1992)).

In *Reardon v. ClosetMaid Corp.* (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730)

2013 WL 6231606, the district court granted summary judgment as to liability on

the issue of willfulness as to class members who received an "authorization form"

that included language purporting to include a liability release. The Court

reasoned:

> Turning to the remaining Disclosure Class members who received
> *only* the Authorization Form it is necessary to determine whether, as it
> contends, ClosetMaid complied with its disclosure obligations under
> section 1681b(b)(2)(A). The title of the Authorization Form states in
> capital letters, "AUTHORIZATION TO OBTAIN A CONSUMER
> CREDIT REPORT AND RELEASE OF INFORMATION FOR
> EMPLOYMENT PURPOSES." The first paragraph of the Authorization
> Form begins as follows:

> Pursuant to the Fair Credit Reporting Act, I hereby authorize
> ClosetMaid and its designated agents and representatives to conduct a
> comprehensive review of my background through a consumer report
> and/or investigative consumer report to be generated for employment,
> promotion, reassignment or retention as an employment.

> ECF No. 97–6 at 5. The subsequent paragraph of the Authorization
> Form explains the type of information that may be included in the
> consumer report. *Id.* The third paragraph begins, "I [ ] authorize the
> complete release of these records or data pertaining to me which an
> individual, company, firm, corporation, or public agency may have." *Id.*
> The waiver of rights provision appears in the fourth paragraph of the
> Authorization Form and states as follows: "I hereby release ClosetMaid
> ... from any and all liability for damages of whatever kind, which may at
> any time, result to me ... because of compliance with this authorization
> and request to release." *Id.* Finally, the last paragraph of the
> Authorization Form states that, "pursuant to the [FCRA], if any adverse
> action is to be taken based upon the consumer report, a copy of the report
> and a summary of the consumer's rights will be provided to me if
> requested." *Id.*

According to Plaintiffs, ClosetMaid's Authorization Form fails to provide a clear and conspicuous disclosure, in violation of section 1681b(b)(2)(A)(i). In addition, Plaintiffs contend that ClosetMaid's inclusion of a waiver of rights provision facially contravenes section 1681b(b)(2)(A)(ii)'s requirement that the disclosure appear "in a document that consists solely of the disclosure." In support of this assertion, Plaintiffs cite to a Federal Trade Commission ("FTC") opinion letter from 1998, which addresses the sufficiency of a combined disclosure and authorization form containing a waiver of FCRA rights.[5] The Letter states as follows:

While we believe that you may combine the disclosure and authorization ..., we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result.

Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1 ("Hauxwell FTC Letter"). Plaintiffs also cite to an FTC opinion letter from 1997, which provides that even where an employer includes a disclosure in an employment application, "an employer that follows this procedure must also clearly and conspicuously disclose in a completely separate document that a consumer report may be obtained for employment purposes, as required by [section 1681b(b)(2)(A) ]." Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J. (Dec. 18, 1997), 1997 WL 33791224 (F.T.C.), 1 ("Hawkey FTC Letter"). The Hawkey FTC Letter further clarifies that "[n]othing else may appear on the document that detracts from the disclosure required by [section 1681b(b)(2)(A) ]. An employer may elect to obtain the consumer's authorization on that document, because that would focus the consumer's attention on the disclosure and thus further the purpose intended by the 'separate document' provision of this section." *Id.* An additional FTC opinion letter from 1997 provides as follows:

23

The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure ... will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. *However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.*

Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 (emphasis added) ("Steer FTC Letter").

. . . The court in *Singleton v. Domino's Pizza,* No. 11–1823, 2012 WL 245965 (D.Md. Jan.25, 2012), however, came to a different, and the Court believes correct, conclusion with regard to an employer's inclusion of a waiver of rights provision in a disclosure form. There, the court denied the employer's motion to dismiss the plaintiff's section 1681b(b)(2)(A) claim, finding that "both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document." *Singleton,* 2012 WL 245965 at *9.

Neither of these eases is binding on this Court; however, the Court agrees with the analysis in *Singleton,* given the rather direct statutory language at issue. Specifically, ClosetMaid's inclusion of a release provision in the Authorization Form, which served as a combined disclosure and authorization form for those Disclosure Class members who did *not* receive a Notice Form as part of their employment application, facially violates section 1681b(b)(2)(A)(i). Although the disclosure itself is arguably "clear and conspicuous" given that the title of the Authorization Form appears in bold capital letters and explains that the consumer report is for employment purposes, the Authorization Form simply does not comply with the FCRA's express requirement that the disclosure appear in a document that consists solely of the disclosure (or, at most, a disclosure and authorization only). Even if the Court were to accept ClosetMaid's characterization of the waiver of rights provision as being narrowly tailored to ClosetMaid's procurement of the applicant's

24

authorization for the consumer report, and not a "great distraction", the release verbiage still is not an "authorization," which is the only other provision the FCRA allows in a valid disclosure form. To hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not a great distraction" safe harbor for impermissible language, which, of course, it may not do. If that is to be done, it is a job for Congress. Therefore, we grant Plaintiffs' Motion for Summary Judgment on the question of liability as to the members of the Disclosure Class who received only the Authorization Form.

That Syed's allegations are sufficient to support a finding of willfulness is supported by the Court's decision in *Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3. In that case, the Court denied a motion to dismiss in which the plaintiff had alleged a violation of Section 1681b(b)(2) based on the inclusion of a liability release. The Court also found allegations of willfulness were sufficient to withstand a motion to dismiss. The Court reasoned:

> This section also contains a liability release for any damage Avila may experience as a result of the disclosure of information about him to NOW Foods, as well as a paragraph indicating that he is an at-will employee who can be terminated at any time with or without cause and that a deliberate misstatement on the application will result in his immediate dismissal. In the final paragraph of this section, Avila agrees to comply with all company rules, policies and procedures. As to the Background Report Authorization Form, it states that "I hereby authorize NOW Health Group, Inc., Argus Services, Inc. and their agents to obtain and review the 'consumer report' or 'investigative consumer report' on me described in the [FCRA Statement]." The form, however, also contains a release of liability or claims that Avila might have arising from the consumer report and any information contained in it.

25

Thus, despite NOW's assertion that both forms comply with the FCRA stand alone disclosure requirement, each form contains information that is not the disclosure, contrary to the express language of the FCRA, which requires a disclosure "in a document that consists solely of the disclosure." . . . At the motion to dismiss stage, where all inferences are made in favor of the nonmovant, the Court is unwilling to conclude that Avila has not stated a claim.

Finally, NOW asserts that Avila has not and cannot allege willfulness, which he must do since he has not alleged actual damages. Avila seeks statutory damages, which are available only for willful violations of the FCRA. *Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir.2008). The Supreme Court has stated that willful "means recklessness—something more than negligence but less than knowledge of the law's requirements." *Id.* at 726. Specifically, the Supreme Court stated that:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. v. Burr,* 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

However, state of mind may be alleged generally. Fed.R.Civ.P. 9(b). Further, it is reasonably inferred that NOW was aware of its disclosure requirement under the FCRA based on the statement in the Background Report Authorization Form. Avila alleges that NOW willfully breached the FCRA because it "violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)" and that its conduct is "contrary to long-standing regulatory guidance and caselaw." (FAC, Dkt. # 36 ¶ 41.) *These allegations are sufficient to allege a knowing or reckless violation of the FCRA*, which are required for a finding of willfulness. *Lavery v. RadioShack Corp.,* 13 C 5818, 2014 WL 2819037, at *2 (N.D.Ill. June 23, 2014) (allegations that amendment to FCRA gave merchants three years to comply with new requirements, which were widely publicized, and merchants were advised by credit card companies of the requirements were sufficient to allege willfulness). (Emphasis added.)

The district court's decision in *Smith v. Waverly Partners, LLC* (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV) 2012 WL 3645324, a case relied upon by M-I, is inapposite. In *Smith*, the plaintiff did ***not*** assert a claim based upon the employer's violation of the "consisting solely of the disclosure" provision in Section 1681b(b)(2)(A)(i). Rather, the plaintiff claimed that the defendant had violated the "clear and conspicuous" requirement of Section 1681b(b)(2)(A) by failing to disclose in the FCRA consent form that her current employer would be contacted as part of the investigative background report.

More importantly, the Court expressly found that the inclusion of the waiver provision in the disclosure form was "statutorily impermissible":

> While such language hardly draws the reader into the proverbial land of lotos-eaters, section 1681b(b)(2)(A) is obviously protective of the disclosure statement's informational segregation. Therefore, in order to give Congress's inclusion of the word "solely" meaningful effect, ***the Court agrees that inclusion of the waiver provision was statutorily impermissible*** . . . (*Id.*, at * 6 (emphasis added).)

The *Smith* court's holding that the inclusion of the indemnity and release provision and other representations in the disclosure form in this case was "statutorily impermissible" fully supports Syed's position that an interpretation to the contrary is "objectively unreasonable" as a matter of law.[6]

---

[6] Syed contends that M-I's interpretation of the statute is objectively

27

## V.  CONCLUSION.

Syed has alleged sufficient facts sufficient to establish that M-I willfully violated its obligations under Section 1681b((b)(2) by including a release and indemnity provision in the disclosure and authorization form it requested Syed to sign and procured a consumer report based on such deficient authorization. The language of the statute is clear, and there was no existing authority that supported any reading of the statute that allowed such language.

---

unreasonable as a matter of law based on the relevant statutory text and legislative history and FTC opinion letters. If this Court does not believe that the issue of whether M-I's interpretation is "objectively unreasonable" is an issue of law, it would seem that, at a minimum, whether M-I's willfully violated the statute is a question of fact for the jury. *See Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3; *Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995) ("The reasonableness of the procedures and whether the [insurance] agency followed them will be jury questions in the overwhelming majority of cases," citing *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991)); *Dalton v. Capital Associated Industries, Inc.* (4th Cir. 2001) 257 F.3d 409, 416; *Lenox v. Equifax Information Services LLC,* No. 05–01501–AA, 2007 WL 1406914, *6 (D.Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Cairns v. GMAC Mortgage Corp.,* No. CV 04–01840 PHX(SMM), 2007 WL 735564, *8 (D.Ariz. Mar.5, 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine"); *Centuori v. Experian Information Solutions, Inc.,* 431 F.Supp.2d 1002, 1007 (D.Ariz.2006) (declining to enter summary judgment on the issue of willfulness in a case involving the reasonableness of consumer protection procedures); *Edwards v. Toys ""R'' Us* (C.D. Cal. 2007) 527 F.Supp.2d 1197, 1210.

28

This Court should find that M-I's violation was willful as a matter of law and reverse the judgment.

Dated: February 2, 2015            Respectfully submitted,


                                   /s Peter R. Dion-Kindem
                                   PETER R. DION-KINDEM
                                   PETER R. DION-KINDEM, P.C.
                                   THE DION-KINDEM LAW FIRM


                                   /s Lonnie C. Blanchard, III
                                   Lonnie C. Blanchard, III
                                   THE BLANCHARD LAW GROUP

                                   *Attorneys for Plaintiff and*
                                   *Appellant Sarmad Syed*

29

## STATEMENT re RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellant states that Appellant is not aware of any related cases pending before this Court.

Dated: February 2, 2015    Respectfully submitted,


      /s Peter R. Dion-Kindem
      PETER R. DION-KINDEM
      PETER R. DION-KINDEM, P.C.
      THE DION-KINDEM LAW FIRM

## C<small>ERTIFICATE RE</small> N<small>UMBER OF</small> W<small>ORDS OF</small> B<small>RIEF</small>

I certify pursuant to FRAP Rule 32(7)(C) that Appellant's Opening Brief contains 8,421 words, including footnotes. Counsel relies on the word count of the computer program used to prepare this brief.

Dated: February 2, 2015               Respectfully submitted,


 /s Peter R. Dion-Kindem
P<small>ETER</small> R. D<small>ION</small>-K<small>INDEM</small>
P<small>ETER</small> R. D<small>ION</small>-K<small>INDEM</small>, P.C.
T<small>HE</small> D<small>ION</small>-K<small>INDEM</small> L<small>AW</small> F<small>IRM</small>

*Attorneys for Plaintiff and
Appellant Sarmad Syed*

31

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 2, 2015.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

> Thomas J. Griffin
> Raymond J. Muro
> Nelson Griffin LLP
> 800 West 6th Street, Suite 788
> Los Angeles, California 90017

Dated: February 2, 2015                      /s Peter R. Dion-Kindem
                                             PETER R. DION-KINDEM
                                             PETER R. DION-KINDEM, P.C.
                                             THE DION-KINDEM LAW FIRM

                                             *Attorneys for Plaintiff and*
                                             *Appellant Sarmad Syed*

32

## CERTIFICATE FOR BRIEF IN PAPER FORMAT

## NINTH CIRCUIT CASE NO. 14-56479

I, Peter R. Dion-Kindem, certify that this brief is identical to the version submitted electronically on February 2, 2015.

Dated: February 2, 2015        /s Peter R. Dion-Kindem
PETER R. DION-KINDEM
PETER R. DION-KINDEM, P.C.
THE DION-KINDEM LAW FIRM

*Attorneys for Plaintiff and
Appellant Sarmad Syed*

33